# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BRANDON JAMES SEYS,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No. 23-CV-1004 CJW-MAR<br>(19-CR-1004 CJW-MAR)<br><br>**ORDER** |

This matter is before the Court on petitioner Brandon James Seys' ("petitioner") motion to vacate, set aside or correct sentence under Title 28, United States, Code Section 2255, filed March 22, 2023. (Doc. 1).[1] Under Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has conducted an initial review of petitioner's motion. For the following reasons, petitioner's Section 2255 motion is **denied**, and this case is **dismissed**.

## I. BACKGROUND

On January 24, 2019, a grand jury in the Northern District of Iowa returned a five-count Indictment against petitioner, charging him with the following offenses: Count 1, conspiracy to distribute methamphetamine; Count 2, possession of firearms during and in relation to a drug trafficking crime; Count 3, possession of firearms by a felon; Count 4, possession with intent to distribute methamphetamine; and Count 5, possession with intent to distribute cocaine. (Crim. Doc. 2). On July 9, 2019, a grand jury returned a

---

[1] Citations to "Doc." herein refer to the docket entries in the Section 2255 case, Case No. 23-CV-1004-CJW-MAR, while citation to "Crim. Doc." refer to the docket entries in the underlying criminal case, Case No. 19-CR-1004-CJW-MAR.

1

superseding indictment against petitioner, charging the same offenses. (Crim. Doc. 51). The changes from the initial indictment were stylistic except that Count 4 was changed to allege that the offense involved 50 grams or more of actual (pure) methamphetamine. (Crim. Doc. 52).

On May 16, 2019, petitioner's attorney, Michael Lahammer, filed a motion to suppress evidence, challenging the initial placement of a GPS tracker which led to a search of petitioner's hotel room, residence, automobile, and storage unit. (Crim. Doc. 18).

On May 21, 2019, petitioner's attorney filed a second motion to suppress evidence alleging the search warrant for the hotel room lacked probable cause and was based on false or misleading information. (Crim. Doc. 20).

On June 4, 2019, petitioner filed a motion to dismiss the indictment on the ground that the government failed to preserve video from a surveillance camera officers used to surveil petitioner's property. (Crim. Doc. 34).

On June 5, 2019, the Honorable Mark A. Roberts, United States Magistrate Judge, presided over an evidentiary hearing on petitioner's motions to suppress. (Crim. Doc. 38).

On August 23, 2019, petitioner's attorney filed a supplemental motion to suppress evidence to further allege that the information supporting the search warrant of the hotel room was stale. (Crim. Doc. 62).

On August 28, 2019, Judge Roberts presided over a second hearing on petitioner's motions to suppress evidence and motion to dismiss the indictment. (Crim. Doc. 67).

On October 8, 2019, Judge Roberts issued a Report and Recommendation ("R&R"), recommending the Court deny petitioner's motions to suppress and motion to dismiss. (Crim. Doc. 86).

On October 21, 2019, the Court adopted Judge Roberts' R&R with minor factual

modifications. (Crim. Doc. 98).

On October 22, 2019, petitioner pled guilty to Counts 1 and 3 of the superseding indictment under the terms of a plea agreement in which the government agreed to dismiss the remaining charges. (Crim. Docs. 102, 103, 106). Petitioner did not enter guilty pleas conditional on his ability to appeal the Court's order denying his motions to suppress and to dismiss. (Crim. Doc. 105).

On February 24, 2020, the United States Probation Office filed petitioner's final presentence investigation report ("PSR"). (Crim. Doc. 116). The PSR found petitioner responsible for 183.39 grams of actual (pure) methamphetamine, 18,516.88 grams of "ice" methamphetamine, 7 grams of methamphetamine mixture, and 95.14 grams of cocaine, for a total combined converted drug weight of 374,038.43 kilograms, resulting in a base offense level of 38. (*Id.*, at 14). Petitioner's attorney lodged objections to the total drug quantity and to various paragraphs within the PSR alleging drug quantities. (*Id.*, at 4-14). The PSR also assessed petitioner with a two-level enhancement for possession of a dangerous weapon in connection with the drug offense. (*Id.*, at 14). Petitioner did not object to this enhancement, nor to portions of the offense conduct that showed him to possess firearms in connection with the drug trafficking. (*Id.*, at 4-14). After a two-level reduction for acceptance of responsibility, petitioner's total offense level was 38.[2] (*Id.*, at 14). Petitioner's prior convictions placed him in Criminal History Category VI. (*Id.*, at 24). So, with a total offense level of 38, Criminal History Category VI, the PSR calculated petitioner's advisory guidelines range of imprisonment as 360 months to life. (*Id.*, at 35).

On April 14, 2020, Mr. Lahammer moved to withdraw as counsel for petitioner

---

[2] Petitioner objected to the government's denial of the third level of reduction for acceptance of responsibility. (Crim. Doc. 116, at 13). At sentencing, the Court found the government's denial was not improper. (Crim. Doc. 181, at 112-13).

3

because of a conflict of interest. (Crim. Doc. 122). The Court granted Mr. Lahammer's motion (Crim. Doc. 123) and appointed attorney John Bishop to represent petitioner. (Crim. Doc. 124).

On May 26, 2020, petitioner moved to withdraw his guilty plea, alleging that an agent gave false testimony on the ability to save surveillance video and had the Court known it, the Court would have granted petitioner's motion to dismiss. (Crim. Doc. 131).

On June 12, 2020, Judge Roberts presided over a hearing on petitioner's motion to withdraw his guilty plea. (Crim. Doc. 139).

On July 27, 2020, Judge Roberts issued an R&R, recommending the Court deny petitioner's motion to withdraw his guilty plea. (Crim. Doc. 150). On September 3, 2020, the Court adopted Judge Roberts' R&R with minor legal modification and denied petitioner's motion to withdraw his guilty plea. (Crim. Doc. 152).

On December 15, 2020, petitioner's attorney filed a motion for a downward variance, citing several grounds. (Doc. 165). On December 18, 2020, petitioner's attorney filed a supplemental motion for a downward variance, arguing that the Court should adopt a policy disagreement with the sentencing guidelines because they treat actual or pure methamphetamine more harshly than methamphetamine mixture. (Crim. Doc. 170).

On December 21, 2020, the Court presided over a contested sentencing hearing. (Crim. Doc. 181). The government called Kim Stonehocker, Kim Hentges, Daniel Findley, and Robbie Hess to testify, and petitioner called Ron Seys as a witness. (*Id.*).

On December 23, 2020, the Court sentenced petitioner to 324 months' imprisonment. (Crim. Doc. 174).

Petitioner appealed his conviction and sentence. (Crim. Doc. 176). On March 1, 2022, the Eighth Circuit Court of Appeals affirmed petitioner's conviction and sentence.

(Crim. Doc. 183-1). The Court of Appeals found the district court did not err in denying petitioner's motion to withdraw his guilty plea. (*Id.*, at 4-6). The Court of Appeals also affirmed the district court's denial of acceptance of responsibility on the ground that petitioner frivolously contested drug quantity at his sentencing hearing, and found the district court did not err in denying his motion for a downward variance because of the disparity in the way that the sentencing guidelines treat pure methamphetamine and methamphetamine mixture. (*Id.*, at 6-8). The Court of Appeals denied petitioner's petition for rehearing en banc. (Doc. 184).

## II. PETITIONER'S MOTION

In his motion, petitioner raises five grounds. First, petitioner claims that his attorney was ineffective advocating for him at a suppression hearing because the attorney allegedly failed to argue that the GPS was installed on petitioner's vehicle in violation of the Fourth Amendment. (Doc. 1, at 5-9). Second, petitioner argues that his attorney was ineffective in advocating for him to be able to withdraw his guilty plea, in particular because the attorney should have obtained information from the manufacturer of the video system. (*Id.*, at 10-15). Third, petitioner claims his attorney was ineffective for failing to challenge the government's failure to prove purity of the methamphetamine above 80%. (*Id.*, at 17-20). Fourth, petitioner claims his attorney was ineffective for failing to move for a downward variance based on the disparity in the way the guidelines treat actual (pure) methamphetamine and methamphetamine mixture. (*Id.*, at 21-22). Last, petitioner claims his conviction for being a felon in possession of a firearm is unconstitutional in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). (*Id.*, at 23-26).

## III. STANDARDS FOR RELIEF

### A. *Section 2255 Standard*

A federal prisoner seeking relief from a sentence under Title 28, United States

Code, Section 2255 on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. To obtain relief under Section 2255, the movant must allege a violation constituting "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)).

Claims brought under Section 2255 may also be limited by procedural default. A movant "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) (citing *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)). Also, even constitutional or jurisdictional claims not raised on direct appeal cannot be raised collaterally in a Section 2255 motion "unless a petitioner can demonstrate (1) cause for the default and actual prejudice or (2) actual innocence." *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

The Court must hold an evidentiary hearing to consider claims on a Section 2255 motion "'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (alteration in original) (quoting Section 2255). Thus, a movant is entitled to an evidentiary hearing "'when the facts alleged, if true, would entitle [the movant] to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "without an evidentiary hearing if the claim is inadequate on its face or if the record

6

affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)). Because the Court finds that petitioner's claims can be conclusively determined based upon the records of the case, no evidentiary hearing will be necessary.

A defendant who enters a plea of guilty thereby waives his right to request relief under Title 28, United States Code, United States Code, Section 2255 with the exception of those issues related to jurisdiction. "A valid guilty plea, however, 'operates as a waiver of all non-jurisdictional defects or errors.'" *United States v. Staples*, 435 F.3d 860, 864 (8th Cir. 2006) (quoting *United States v. Vaughan*, 13 F.3d 1186, 1188 (8th Cir. 1994)).

When a petitioner pleads guilty, the focus of a collateral attack under Section 225 must remain "limited to the nature of counsel's advice and the voluntariness of the plea." *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (quoting *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)). "[A] guilty plea operates as a break in the chain of events . . . of the criminal process. . . . [A criminal defendant] may not thereafter raise independent claims relating to deprivation of constitutional rights that" antedated the plea. *Tollett*, 411 U.S. at 267. Only the voluntary and intelligent character of the guilty plea may be attacked. *Id.* Although the *Tollett* decision concerned state prisoner habeas corpus petitions, the Eighth Circuit has applied it to motions under Section 2255. *Bass*, 739 F.2d at 406.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take

7

other action the judge may order.

(effective December 1, 2004). The Court finds here that it plainly appears from the motion and the record of prior proceedings that petitioner is not entitled to relief.

### B. *Ineffective Assistance of Counsel Standard*

The Sixth Amendment ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . the assistance of counsel for his defence." U.S. CONST. amend. VI. Thus, a claim of ineffective assistance of counsel necessarily gives rise to a constitutional issue. *See Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985). Unlike other constitutional issues, however, claims of ineffective assistance of counsel are better suited for collateral attack under Section 2255 than direct appeal because the reviewing court is able consider the entire record. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003). Accordingly, "a showing of ineffective assistance of counsel [generally] satisfies both cause and prejudice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

"To establish ineffective assistance of counsel within the context of section 2255, however, a movant faces a heavy burden[.]" *Id*. The petitioner must prove his counsel's representation was (1) deficient and (2) the deficient representation prejudiced petitioner's defense. *Id*. (citing *Strickland v. Washington*, 466 U.S. 668 (1984). "Deficient" representation is representation that falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. It is conduct that fails to conform to the degree of skill, care, and diligence of a reasonably competent attorney. *Id*. at 687. In assessing the deficiency prong, courts presume "counsel's conduct falls within a wide range of reasonable professional assistance." *United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001). Counsel's deficient representation is, in turn, "prejudicial" if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

"Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The *Strickland* two-prong ineffective assistance of counsel analysis applies to both convictions at trial and guilty pleas. *Hill v. Lockhart*, 474 U.S. at 57. "In the context of guilty pleas, the first half of the . . . test is nothing more than a restatement of the standard of attorney competence already set forth," namely, that counsel's advice must fall "within the range of competence demanded of attorneys in criminal cases." *Id.* at 56-57. "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. As such, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Id.* In making this determination, a reviewing court will typically need to assess whether counsel would have changed his recommendation as to the plea if not for the error. *Id.* "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id.*

Because a petitioner must show both deficient performance and prejudice, a court need only address one prong of the ineffective assistance analysis if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Further, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).

### IV.   ANALYSIS

#### A.   *Ground 1: Attorney's Performance Advocating Suppression*

Petitioner first claims that his attorney was ineffective advocating for him at a suppression hearing because the attorney allegedly failed to argue that the GPS was installed on petitioner's vehicle in violation of the Fourth Amendment. (Doc. 1, at 5-9).

9

Case 2:23-cv-01004-CJW-MAR   Document 3   Filed 05/12/23   Page 9 of 19

Petitioner argues there was nothing in the affidavit in support of the GPS warrant to show that his "car had been or was likely to be used in [drug] trafficking activities." (*Id.*, at 9).

Petitioner pled guilty of the charges and did not reserve the right to appeal the order denying his motion to suppress evidence. When petitioner pled guilty, he assured the Court that he was satisfied with the performance of his attorney. (Crim. Doc. 103, at 2). It is well established that a valid plea of guilty is an admission of guilt that waives all nonjurisdictional defects and defenses. *United States v. Smith*, 422 F.3d 715, 724 (2005). Thus, petitioner cannot now challenge collaterally the suppression issue after he pled guilty and waived the right to challenge the constitutionality of the evidence.

Regardless, petitioner is simply wrong in asserting that his attorney failed to challenge the constitutionality of the GPS installation on petitioner's car. Petitioner's attorney filed a motion to suppress that very evidence. (Crim. Doc. 18). The Court heard evidence on the issue of whether there was probable cause to support installation of the GPS tracker. (Crim. Doc. 89). In a very thorough R&R, Judge Roberts analyzed at length the constitutionality of the installation of the GPS tracker and found it was supported by probable cause. (Crim. Doc. 86, at 14-33). This Court adopted Judge Roberts' R&R and denied petitioner's motion to suppress on this ground. (Crim. Doc. 98).

In short, petitioner's attorney's performance was not deficient. He filed a motion to suppress the evidence, thoroughly litigated it, and lost on the merits. Petitioner's motion here is nothing more than an attempt to relitigate that issue all over again. Petitioner may be unhappy with the Court's ruling, but he gave up his chance to appeal that ruling to a higher Court by pleading guilty. He cannot now come back to Court in an attempt to relitigate that issue under the false assertion that his attorney was ineffective for failing to raise the issue.

Thus, the Court finds petitioner's Section 2255 motion on this ground is without merit and is denied.

### B. Ground 2: Attorney's Performance Advocating Withdrawal of Plea

Petitioner second argument is that his attorney was ineffective in advocating for him to be able to withdraw his guilty plea, in particular because the attorney should have obtained information from the manufacturer of the video system. (Doc. 1, at 10-15).

In collateral proceedings under Section 2255, "[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated." *United States v. Wiley*, 245 F.3d 750, 751 (8th Cir. 2001) (citing *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000)); *see also Lefkowitz v. United States*, 446 F.3d 788, 790-91 (8th Cir. 2006) ("Absent an intervening change in the applicable law, issues that have been raised and decided on a motion for a new trial cannot be reconsidered in a subsequent collateral attack." (quoting *United States v. Sanders*, 723 F.2d 34, 36 (8th Cir.1983)); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) ("It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981))); *Dall v. United States*, 957 F.2d 571, 572-73 (8th Cir. 1992) (per curiam) (concluding that claims already addressed on direct appeal could not be raised); *United States v. Kraemer*, 810 F.2d 173, 177 (8th Cir. 1987) ("[Movant] cannot raise the same issues in a § 2255 petition that have been decided on direct appeal or in a new trial motion"); *Butler v. United States*, 340 F.2d 63, 64 (8th Cir. 1965) (concluding that a movant was not entitled to another review of an issue disposed of on prior appeal). With respect to a claim that has already been conclusively resolved on direct appeal, the Court may only consider the same claim in a collateral action if "convincing new evidence of actual innocence" exists. *Wiley*, 245 F.3d at 752 (citing cases and emphasizing the narrowness of the exception).

Here, petitioner again seeks to relitigate a matter he litigated before this Court, then appealed to the Eighth Circuit Court of Appeals and lost again. Much of petitioner's argument on this issue has nothing to do with alleged ineffective assistance of his attorney, but rather, attacks the Court's reasoning and holding. (Doc. 1, at 10-14). The only allegation he makes here about his attorney is to allege his attorney should have obtained information from the manufacturer of the video system which, in petitioner's estimation, would have shown that the government deleted some files. (*Id.*, at 15). Petitioner bases this assertion apparently on information obtained from a website. (*Id.*).

Petitioner's attorney was not ineffective. He thoroughly litigated petitioner's motion to withdraw his guilty plea on the ground that new evidence showed video surveillance footage could have been saved by the government but was not, and that should have resulted in the granting of petitioner's motion to dismiss, justifying him withdrawing his guilty plea. (Crim. Docs. 131 & 131-1). It was clear from the litigation over petitioner's motion to withdraw that the video equipment could save footage. (Crim. Doc. 150, at 9). Additional information from the manufacturer to that effect was not material to the issue of whether petitioner could withdraw his guilty plea. Thus, petitioner's counsel was not ineffective for failing to obtain and add that additional information because it was already established by other evidence that video footage could have been saved.

Regardless, petitioner was not prejudiced by counsel's failure to obtain this additional information first because it was not material, but also because the decision whether to allow petitioner to withdraw his guilty plea did not turn on this issue. Rather, the question turned first on whether there was any evidence of a *Brady* violation and the Court found none. (*Id.*, at 9-26). The Court also found no misconduct by the government in failing to preserve the video footage. (*Id.*). On appeal, the Eighth Circuit Court of Appeals held:

12

> Seys admits the missing surveillance video is only potentially useful and thus he needed to show Kearney acted in bad faith to prevail on his due process claim. After two hearings where Kearney and other law enforcement officials testified about their handling of the surveillance video, the district court concluded the law enforcement agents' actions fell "far short of the type of behavior which could plausibly be considered to be bad faith." The district court explained there was no evidence Kearney intentionally destroyed files, consciously suppressed exculpatory evidence, or otherwise tried to circumvent disclosure requirements. And the district court rejected Seys's position that Kearney acted in bad faith, reasoning this speculation was based on "unreasonable" inferences and "an overly literal parsing of . . . Kearney's testimony and assumptions about what law enforcement agents from different but related agencies should know throughout the course of a prolonged investigation." Our review of the record convinces us there is no basis to disturb the district court's determination.
>
> Without a potentially meritorious due process claim, the only other allegedly fair and just reason Seys advanced for withdrawing his guilty plea was his desire to use Kearney's purportedly inconsistent explanations regarding the video to impeach him at trial. Applying our precedent, the district court decided this was not a fair and just reason for Seys to withdraw his guilty plea. . . . Under these facts, we agree with the district court's assessment.

(Crim. Doc. 183-1, at 5-6 (citations omitted)).

In short, petitioner's motion to withdraw his guilty plea would have been denied, and that denial affirmed on appeal, even if there had been additional evidence dug up by petitioner's counsel from the manufacturer about the retention abilities of the video equipment.

Thus, the Court finds petitioner's Section 2255 motion on this ground is without merit and is denied.

### C. Ground 3: Attorney's Failure to Challenge Drug Quantity at Sentencing

Petitioner next claims his attorney was ineffective for failing to challenge the government's failure to prove purity of the methamphetamine above 80%. (Doc. 1, at

13

17-20). As noted above, petitioner's drug quantity at sentencing was composed of various quantities of actual (pure) methamphetamine, so-called ice methamphetamine, methamphetamine mixture, and cocaine. Petitioner asserts there was insufficient evidence to establish that he was trafficking in ice methamphetamine, which to qualify must be at least 80% pure. (Doc. 1, at 17-20). Petitioner argues that if his attorney would have effectively challenged the drug quantity calculation based on the ice methamphetamine, he would have received a lower sentence. (*Id.*, at 20).

Petitioner's attorney's performance was not deficient. He objected to all portions of the PSR assessing petitioner with drug quantities based on so-called ice methamphetamine and to the total drug quantity calculation, except to selling small user quantities. (Crim. Doc. 116, at 5-14). At the sentencing hearing, petitioner's attorney cross examined each of the government's witnesses about the alleged drug quantities of ice methamphetamine they testified they either saw petitioner possess or distribute, and cross examined the witnesses about their inability to testify about the purity of the methamphetamine. (Crim. Doc. 181, at 36-37, 49-53, 58-63, 70-72). Petitioner's attorney also argued at length to the Court to find a lower drug quantity based on the alleged lack of evidence showing petitioner distributed ice methamphetamine. (*Id.*, at 84-96). Based on petitioner's attorney's cross examination, the Court significantly reduced the drug quantity it found petitioner responsible for from a level 38 to a level 34. (Crim. Doc. 181, at 110-11). Petitioner's motion suggests his attorney should have focused more on the lack of purity testing, but the way in which an attorney challenges drug quantity, the precise argument he makes, is a matter of strategy that is not for a court to question in hindsight under the *Strickland* test.

Regardless, petitioner was not prejudiced by counsel's performance because "[n]o credible evidence points to the conclusion that the district court would have changed its ruling based on an objection from counsel." *See Auman v. United States*, 67 F.3d 157,

14

162 (8th Cir. 1995). The Court explained at length its findings on drug quantity at the sentencing hearing. (Crim. Doc. 181, at 104-111). Officers had seized a large quantity of methamphetamine from petitioner that tested at the laboratory as 183.39 grams of actual or pure methamphetamine. (Crim. Doc. 116, at 9; Crim. Doc. 172). Regardless of whether petitioner's attorney would have made more of an attack on the lack of testing of the purity of the ice methamphetamine assessed against him by witnesses, the Court would have found that it was more than 80% pure based on the purity of the same type of methamphetamine seized from him. Although it may have been possible that the purity level of the methamphetamine petitioner was distributing to others fell below 80% purity, it is highly unlikely given the purity of the methamphetamine seized from him. The government had to prove drug quantity by a preponderance of the evidence, and the Court needed to only arrive at a reasonable conclusion as to the drug quantity. Under these standards, the Court would have found petitioner responsible for the same drug quantity regardless of whether petitioner's attorney had made a more nuanced argument about the purity of the methamphetamine petitioner was distributing.

Thus, the Court finds petitioner's Section 2255 motion on this ground is without merit and is denied.

### D. *Ground 4: Failure to Move for Downward Variance*

Petitioner's penultimate claim is that his attorney was ineffective for failing to move for a downward variance based on the disparity in the way the guidelines treat actual (pure) methamphetamine and methamphetamine mixture. (Doc. 1, at 21-22). This argument is without merit.

First, petitioner's attorney did move for a downward variance on that ground. (Crim. Doc. 170). At the sentencing hearing, petitioner's attorney argued in support of that motion. (Crim. Doc. 181, at 138-39). The Court rejected that motion. (*Id.*, at 145-47). On appeal, petitioner's attorney argued the Court erred in not granting that motion.

15

The Eighth Circuit Court of Appeals affirmed this Court's denial of a downward variance on this ground. (Crim. Doc. 183-1). Thus, petitioner's attorney's performance was not deficient.

Second, petitioner cannot show prejudice. The Court was well-aware of its authority to categorically reject a Guideline based upon policy grounds, but has repeatedly refused to reject the methamphetamine guideline, despite being invited to do so. *See, e.g.*, *United States v. Tafolla*, No. 22-2208, 2022 WL 3973617, at *1 (8th Cir. Sept. 1, 2022) (affirming this Court's rejection of a downward variance motion on grounds of a policy disagreement on the Guidelines' treatment of ice or actual methamphetamine); *United States v. Decker*, No. 20-3300, 2021 WL 5407471, at *1 (8th Cir. Nov. 19, 2021) (same); *United States v. Wahlen*, 845 Fed. App'x 485, 485 (8th Cir. 2021) (same); *United States v. Jindra*, 803 Fed. App'x 51, 52 (8th Cir. 2020) (same). In short, petitioner's attorney did not perform deficiently in failing to make this argument, but even if he had, there is no possibility petitioner was prejudiced.

Thus, the Court finds petitioner's Section 2255 motion on this ground is without merit and is denied.

### E. Ground 5: Constitutionality of Firearm Statute

For his fifth ground for relief, petitioner argues that his conviction for being a felon in possession of a firearm is unconstitutional in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). (Doc. 1, at 23-26). Petitioner's claim is without merit for numerous reasons.

First, again, it is well-established that "[a] guilty plea waives all defects except those that are jurisdictional." *United States v. Todd*, 521 F.3d 891, 895 (8th Cir. 2008) (internal quotation omitted); *see also Walker v. United States*, 115 F.3d 603, 604 (8th Cir. 1997) ("[A] valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence.")

(internal quotation omitted). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. Here, petitioner pled guilty to being a felon in possession of a firearm and did not challenge the constitutionality of the statute at that time, or on appeal. He cannot now collaterally attack his conviction on a ground he could have but did not raise before. Moreover, *Bruen* did not announce a new rule retroactively available on collateral review. It was a statutory interpretation case, not a substantive constitutional challenge under the Due Process Clause. *See, e.g.*, *Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016) (finding "*Mathis* did not announce [a new rule made retroactive by the Supreme Court]; it is a case of statutory interpretation.").

Second, contrary to petitioner's argument, *Bruen* did not invalidate *D.C. v. Heller*, 554 U.S. 570 (2008), where the Supreme Court unequivocally validated the constitutionality of the statute barring felons from possessing firearms. Throughout the opinion in *Bruen*, the Supreme Court relied upon and applied *Heller's* analysis and logic. Further, in *United States v. Stuckey*, 255 F.3d 528 (8th Cir. 2001), the Eighth Circuit Court of Appeals held that Title 18, United States Code, Section 922(g) is constitutional and not violative of the Commerce Clause. The Court is bound by that decision until and unless the Eighth Circuit Court of Appeals would find that *Bruen* overruled it.

Third, the Court's own understanding of *Bruen* would show that it does not in any way invalidate the statutory bar against felons possessing firearms. In *Bruen*, the Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and the government must "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. The Supreme Court reiterated that "[t]he Second Amendment

17

'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." 142 S. Ct. at 2131 (quoting *Heller*, 554 U.S. at 635) (emphasis omitted). *Bruen* confines its holding to the context of regulations that "burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133 (emphasis added). Petitioner is not a law-abiding citizen, "and regulations governing non-law abiding citizens' use of firearms do not implicate *Bruen*." *See United States v. Nevens*, Case No. CR 19-774-DMG, 2022 WL 17492196, at *2 (C.D. Ca. Aug. 15, 2022) (citing *People v. Rodriguez*, 171 N.Y.S. 3d 802, 806 (N.Y. Sup. Ct. 2022) ("Defendant misreads *Bruen* as eviscerating the police powers of State to address criminality, or as applying to anyone other than law-abiding citizens.")).

Thus, the Court finds petitioner's Section 2255 motion on this ground is without merit and is denied.

## V. CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2255 Cases, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). Petitioner must make a substantial showing of the denial of a constitutional right to be granted a certificate of appealability in this case. *See Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The Court finds that it is undebatable that the record show that petitioner's Section 2255 motion is without merit. Consequently, a certificate of appealability is also denied. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (to satisfy Section 2253(c), a petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

## *VI.    CONCLUSION*

Petitioner is entitled to no relief, and his Title 28, United States Code, Section 2255 motion (Doc. 1) is **denied**.  A certificate of appealability is also **denied.**  This case is **dismissed**, and judgment will enter in favor of the United States.

**IT IS SO ORDERED** this 12th day of May, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa